Herman J. Behrens et al., Plaintiffs-Appellants, v. Leonard A. Scharringhausen and Evelyn J. Scharringhausen, Defendants-Appellees.

Gen. No. 47,615.

First District, Second Division.

May 19, 1959.

Released for publication September 29, 1959.

George C. Rabens and Emanuel Gordon, of Chicago, for plaintiffs-appellants.

Hoffman & Davis and A. F. Wild, of Chicago, for defendants-appellees.

JUSTICE MURPHY delivered the opinion of the court.

Plaintiffs sued to restrain defendants from pumping percolating water from defendants' gravel pit, claiming the use of large and powerful pumps is forcefully depleting the water supply of plaintiffs, both below and upon their farm lands. The decree dismissed the suit for want of equity at plaintiffs' costs. Plaintiffs appeal.

Plaintiffs own and live on farm land in Cook County, Illinois, and derive their livelihood from their farms. A supply of water is essential for their livestock and crops, and their own personal daily requirements. They obtain water from sources beneath and upon their lands.

Defendants are engaged in the business of excavating and selling sand and gravel from a gravel pit adjacent to the farm lands of plaintiffs. Blue clay is found in the gravel area, and in a dry gravel pit it is possible to pick out the blue clay, but when the gravel area is covered with water, the blue clay cannot be seen and becomes mixed with the gravel, making it unsalable.

Prior to March, 1956, there was no water in the gravel pit except after a heavy rain. Subsurface waters then commenced to ooze into the gravel pit, and defendants installed two electric pumps to free the pit of water and to permit them to see the blue clay. The excess water is pumped to the surface and discharged into a creek that flows through the lands of plaintiffs. Plaintiffs claim it is the use of the pumps which has rapidly lowered the ground water table in plaintiffs' farms, requiring them to sink deeper wells

327

and install additional pipe and larger pumps to obtain water necessary for their farms.

The master found, on lay and expert testimony, that the pumps contributed to lowering the water level in plaintiffs' farms and was not a reasonable use of the pit, which could be operated profitably by other means. He further found that plaintiffs failed to prove monetary damages. He recommended a permanent injunction but that no damages should be assessed.

The chancellor rejected the master's recommendation. He referred to the two principle rules followed by courts of this country in determining "percolating water" cases, and decided that the result would be the same whether he applied the "English rule" or the "reasonable use" rule. He thought the Illinois Supreme Court in Edwards v. Haeger, 180 Ill. 99, approved the "English rule." He found that plaintiffs had not proved by a preponderance of evidence that they had been irreparably injured and denied the injunction.

██ The question is whether the decree is proper under the law and evidence. (Zilvitis v. Szczudlo, 409 Ill. 252 (1951); Brown v. Moore, 407 Ill. 618 (1950).) Since the chancellor did not hear any testimony in open court, the findings of the chancellor may be overruled if we are inclined to find otherwise. The findings need not be contrary to the manifest weight of the evidence for us to do so. County of Cook v. Glasstex Co., 16 Ill.2d 72, 77 (1959).

██ We concur with the finding of the chancellor that irreparable injury to the plaintiffs is not established by the weight of the evidence, and that plaintiffs, to the extent needed by them, have been able to insure themselves of adequate well water, by extending the length of the pipes in their wells and by installing larger pumps.

We believe it unnecessary to discuss at length the many cases cited by counsel in support of both "percolating water" rules, in view of our conclusion that the facts in this case, as presented by the evidence, call for the same result no matter which doctrine is applied—the "English rule" or the American rule of "reasonable use."

There is growing concern about the future water supply of the United States, and water law at the present time is receiving increasing scrutiny. We think it useful to mention the basic rules of law governing the "percolating water" disputes and a sample of the cases cited, as it is conceded that the waters in question are "percolating waters."

The English or common law rule, first applied to percolating waters in Acton v. Blundell, 12 Meeson and Welsby's Reports 324 (1843), is to the effect that the person who owns the surface may dig therein and apply all that is there found to his own purposes at his free will and pleasure absolutely, and if, in the exercise of such right, he intercepts and draws off percolating water which collects in his neighbor's well, this inconvenience to his neighbor cannot be the ground of an action. This rule was followed in a majority of early decisions in the United States. Many states, including New York, New Jersey, California, Florida, Indiana and Utah, have since modified or rejected it in favor of what has become known generally as the American doctrine of "reasonable use."

The rule of "reasonable use" limits the right of the landowner to such amount of the percolating waters under his lands as may be necessary for some useful purpose, or such as it may be necessary for him to divert in order to make reasonable use of his land, and not restricting his right to use it elsewhere in the absence of proof of injury to adjoining landowners.

(93 C. J. S. 771.) Under that doctrine, a landowner has no right to intercept and waste percolating water under his land, whether through malice or indifference, if, by such waste, he injures a neighbor landowner; and, as an owner, he may not drain such waters from his neighbor's lands for the sole purpose of wasting them. 93 C. J. S. 773.

The rule of reasonable use, as it is actually applied, is not a different rule from the English rule, but is merely a limitation thereon. (Canada, et al. v. City of Shawnee, 64 P.2d 694, 179 Okla. 53 (1936).) What constitutes a reasonable use is a question of fact to be determined from the facts and circumstances of each particular case. Erickson v. Crookston Waterworks, Power & Light Co., 117 N. W. 435, 105 Minn. 182.

The Illinois rule on percolating water seems to rest on Edwards v. Haeger, 180 Ill. 99 (1899). We question defendants' contention that this case places Illinois in the group of states adhering to the English common law rule concerning rights in percolating waters. In rendering its opinion the Supreme Court did outline the English rule but did not mention Acton v. Blundell, although cited by counsel. This omission may be explained by the language of the court on page 108:

*"The question of the effect of the motive prompting the interference with the source of supply of water by collecting percolating water, which has been the subject of conflicting decisions in the courts of different States, does not arise in this investigation,* as it clearly appears from the allegations of the bill the appellant had lawful right to dig the new well and conduct the water by pipes to his barn and other buildings, it appearing from the allegations of the bill the work of laying the pipe from the well to the barn was being prosecuted in such manner as not to in-

terfere with the operation of the mill ditch." (Italics ours.)

This statement may carry the implication that, in a proper case, our Illinois Supreme Court might announce a doctrine of reasonable use in relation to the needs of adjoining owners.

We are satisfied that the decision of the chancellor was in accordance with the evidence, and therefore the decree is affirmed.

Affirmed.

LEWE, P. J. and KILEY, J., concur.